## CORB PAYNE et al. v. STATE.

No. A-3892.    Opinion Filed Sept. 16, 1922.
(209 Pac. 334.)

(Syllabus.)

1.  **Mayhem—Information—Particular Description of Instrument Un-necessary.**—In an action for maiming, where the information charges an assault with a blunt instrument, wounding and permanently injuring one of the eyes of the person assaulted, where a battery as well as an assault is charged:

    (a)  Under the circumstances in this case, a particular description of the instrument used need not be alleged.

2.  **Appeal and Error—Mayhem—Evidence Concerning Unidentified Club and as to Statements by Injured Person not Prejudicial.**—Evidence concerning a certain club or "billy" held improper, but immaterial, and not prejudicial.

    (a)  Likewise as to evidence of what the injured person said at the police station after the difficulty.

3.  **Trial—Mayhem—Sufficiency of Instructions Relating to Reasonable Doubt and Premeditated Design to Maim.**—Instructions relating to reasonable doubt and premeditated design examined, and found sufficient.

4.  **Appeal and Error—Incomplete Record—Presumption of Correct Rulings.**—Where the record is incomplete touching upon alleged disparaging remarks made in the closing argument, this court will presume that the trial court ruled correctly.

Appeal from District Court, Creek County; Mark L. Bozarth, Judge.

Corb Payne and Earl Williams were convicted of maiming, and they appeal. Affirmed.

Frank P. Smith, for plaintiffs in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J.   Corb Payne and Earl Williams were on April 7, 1920, convicted of the crime of maiming, and the punishment of each was fixed at confinement in the state penitentiary

for a term of three years. The amended information in substance charges that:

"Said defendants, Corb Payne and Earl Williams, then and there being, without authority of law, and with the premeditated design to injure one E. E. Hensel, and to disfigure his personal appearance and disable the members and organs of his body, and seriously diminish his physical vigor, in and upon the said E. E. Hensel unlawfully, willfully, purposely, and feloniously did then and there make an assault upon the said E. E. Hensel with a certain blunt instrument or instruments, a better description of which is not known to the county attorney, the said Corb Payne and Earl Williams then and there had and held in their hands, on the right eye of the said E. E. Hensel purposely, unlawfully, willfully, and feloniously did injure and destroy the same, with a premeditated design on the part of them, the said Corb Payne and Earl Williams, to injure, disfigure, disable, and seriously diminish his physical vigor, all of which is contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state."

The injured man testified that he was a police officer, holding the position of desk sergeant in the city of Sapulpa; that on the night of June 27, 1919, he saw defendant Williams on the street in Sapulpa, opposite where he was; that Williams was quarreling with some negroes, using loud, profane, and vulgar language. Witness ordered Williams to cease, but Williams continued, saying he was from overseas and was not going to let any "d——negro bump him around on the street." After some argument the officer took hold of Williams and started towards the police station. After the objectionable talk ceased, the officer hesitated whether to take williams further or not. While he so hesitated, Williams attempted to escape, and defendant Payne caught hold of witness for the purpose of overcoming him and permitting Williams to escape. Witness was knocked down, struck, beaten, and abused in the encounter; both defendants making their escape. The witness then went on towards the police station and reported the af-

fair. A short time thereafter the defendants were arrested in the vicinity of the place where the difficulty occurred. The testimony is conflicting as to just the manner in which the blow was struck that destroyed the eyesight of the witness.

Fourteen assignments of error are urged as to why the judgment of the trial court should be reversed. These assignments may be condensed and summarized thus:

(1) That the court erred in overruling the demurrer to the amended information, on the ground that the amended information failed to show the manner in which, or with what instrument or weapon, if any, the beating and striking was done, and that no battery was charged.

(2) That the court erred in permitting the state to withhold certain evidence that should have been introduced in chief, if admissible at all, and permitted it to be introduced in rebuttal.

(3) That the court erred in admitting in evidence a statement of the prosecuting witness Hensel, made at or near the city hall, after the difficulty was over, and in the absence of the defendants.

(4) That the court erred in giving instruction No. 4, and in refusing to give a substitute instruction offered by the defendants.

(5) That the court erred in failing to properly admonish the jury in regard to improper remarks of the special prosecutor in his closing argument to the jury.

Section 2345, R. L. 1910, defines the crime of maiming as follows:

"Any person who, with premeditated design to injure another, inflicts upon his person any injury which disfigures his personal appearance, or disables any member or organ of his

body, or seriously diminishes his physical vigor, is guilty of maiming."

It is contended by the defendants that that part of the information, "the defendant did then and there make assault upon the said E. E. Hensel with a certain blunt instrument or instruments * * * then and there had and held in their hands, on the right eye of the said E. E. Hensel," failed to charge that a battery was committed, as well as an assault. We think this amended information, construed as a whole, necessarily implies that a battery, as well as an assault, was committed, and that the information was sufficient, and sufficiently apprised the defendants of the nature of the accusation against them. It would be absurd to contend that the eye of the prosecuting witness could have been permanently injured and the sight destroyed by a mere simple assault, without a battery, and it would be a strained construction to say that this information does not state a battery. Where a personal injury results from an assault upon person, a battery is necessarily implied. Cotton v. State, 22 Okla. Cr.—, 210 Pac. 739.

Defendants next complain of the testimony of Richard Jeffrey, introduced by the state in rebuttal. The evidence in chief did not show definitely by what means or with what instrument the wound in the eye was inflicted. It occurred some time during the fight, and may have been inflicted by the bare fist, or by some small instrument held in the fist, or by a black-jack or billy. Richard Jeffrey, a boy whose father had a blacksmith shop near the scene of the difficulty, said that some three or four months before the trial he was passing through the alley near where this controversy took place, and found a stick or policeman's billy, which he turned over to his father and had not seen since; that the policeman's club exhibited to him was the stick, or was like the stick, he found and delivered to his father. This witness did not positively

identify this stick or billy, and the court, over the objections of the defendants, permitted it to be introduced as an exhibit.

We are inclined to agree with counsel for defendants that no proper foundation was laid for the introduction of this exhibit, and that the instrument was not properly identified as being the one previously found by the boy, and for the further reason that it was not shown that the defendants had anything to do with this particular stick or club. The injured prosecuting witness had previously testified that he had carried such a stick that evening, and that he had it when the difficulty commenced, but that it was taken away from him during the difficulty. Under all the circumstances in this case, we think it was immaterial whether this particular stick or billy was the one with which the wound was inflicted or not. Maiming may be accomplished with the clenched fist, or with any instrument calculated to inflict bodily injury. This man's eye may have been ruptured by the fist of his assailants, or by some stick, black-jack, or billy club, and the finding of this particular club in the alley near where the difficulty occurred could be only a remote circumstance affecting the issue one way or another. There was no question but that the man's eye was permanently injured. There was no question but that he received this injury during the progress of this difficulty, and that it was inflicted by one or the other of the defendants; the testimony indicating that the two were acting in concert and were therefore jointly responsible.

Where the kind of instrument or weapon with which the injury was inflicted is unknown, and that fact so stated in the information, proof may be made to the effect that the injury was inflicted by an instrument of any character. Our statute expressly provides that it is immaterial by what means or instrument, or in what manner, the injury is inflicted, and that the design to injure or disfigure is inferred from the fact that

an injury was inflicted, unless the circumstances indicate the contrary. Sections 2348 and 2350, R. L. 1910. Under these circumstances, we think the rights of the defendants were not prejudiced by the introduction of this evidence on rebuttal. The order in which testimony may be introduced is largely within the discretion of the trial court. 26 R. C. L. "Trial," §§ 41, 42.

Exceptions were taken to portions of the testimony of C. H. Payton, another police officer of Sapulpa, as being hearsay testimony and not a part of the res gestae. Omitting the objections interposed and dialogue between court and counsel the testimony complained of is as follows:

"Q. Where did you first see Mr. Hensel after this [difficulty] occurred? A. He was right in front of the city hall.

"Q. Where was you? A. At the corner there. I was coming out in the car, starting to town.

"Q. What was the general appearance of Mr. Hensel at that time? A. I didn't know him when I first saw him; he was all bloody. I didn't know until I got up to him who he was.

"Q. Do you know the defendants, Corb Payne and Earl Williams? A. Yes, sir.

"Q. Now, did you have a conversation with Mr. Hensel there at that time, when he stepped up to the door, about what was the matter with him? A. Why, yes.

"Q. What did he say was the matter with him? A. He didn't know just exactly at the time who it was. He knew them, but not by name.

"Q. Did he describe them to you? A. Yes, sir.

"Q. From the description he gave of them, did you know who it was? A. Well, no; not at the time I didn't just exactly know who it was from the description.

"Q. Did you arrest these boys? A. Yes, sir.

"Q. Which one? A. Corb Payne.

"Q. Did you see Williams after he was arrested that night? A. Yes, sir.

"Q. Did the description Mr. Hensel gave you of the boys —did he say anything about the kind of clothes they had on? A. How come me to go after Payne and Williams, I met Sunrise Gibson on the corner, and he said these were the two boys connected with it.

"Q. Did he give you a description of either of one of those boys' clothes? A. Yes, sir.

"Q. What did he say? A. He said he had Williams by the collar, and tore his shirt open in front.

"Q. Did you see Williams after he was arrested? A. Yes, sir.

"Q. What was the condition of his clothes then? A. Oh, his shirt was all tore open here, (indicating), and his tie was pulled plumb around to the side."

This testimony was unimportant, except the description given of Williams' shirt being torn open, for the purpose of identification. The witness, however, testified that he did not apprehend Williams and his codefendant upon the description given him by the prosecuting witness, but stated that he made the arrest on account of the statement made to him by Sunrise Gibson, who pointed them out as the two boys who were connected with the difficulty. We agree with counsel for defendants that this conversation was not a part of the res gestae; but the statements made by witness were immaterial, because they did not tend to elucidate or explain the incidents connected with the injury or the assault. The fact that Williams' shirt was torn open at the throat could have been properly proved in another way; but the fact that it was introduced in this irregular manner did not operate to defendants' prejudice.

Defendants complain that the court, in instruction No. 4, stressed the question of reasonable doubt as applying to whether or not the assault complained of was made at the time and place set out in the information, implying that reasonable doubt did not apply to the element of premeditated design to injure. The court gave an instruction upon reasonable doubt, being instruction No. 2, as follows:

"The jury are further instructed that the defendants are presumed to be innocent of the charge against them, and this presumption continues and abides with them throughout the trial, or until it has been overcome by testimony which satisfies you beyond a reasonable doubt of the guilt of the defendants."

Following that was an instruction upon premeditated design, as follows:

"You are instructed, gentlemen of the jury, that any person who, with a premeditated design to injure another, inflicts upon that person any injury which disfigures his personal appearance, or disables any member or organ of his body, or seriously diminishes his physical vigor, is guilty of maiming."

The instruction complained of is as follows:

"You are instructed, gentlemen of the jury, if you believe and find from the testimony in this case beyond a reasonable doubt that the defendants, Corb Payne and Earl Williams, on or about the time mentioned in the information and in this county and state, with a premeditated design to injure E. E. Hensel, and to disfigure his personal appearance, and disable the members and organs of his body, and seriously diminish his physical vigor, made an assault upon the said E. E. Hensel unlawfully, willfully, purposely, and feloniously, with a certain blunt instrument or instruments, and by reason of such assault the right eye of the said E. E. Hensel was injured and destroyed, then your verdict should be guilty. On the other hand, if after a consideration of all the testimony in this case you have a reasonable doubt as to whether or not assault complained of was made at the time and place set out in the in-

formation, and in the manner complained of, then your verdict should be not guilty."

We think the three instructions quoted, considered together, fairly state the law relating to reasonable doubt and premeditated design. The language used by the court, "in the manner complained of," has reference to the information; the definition of the offense was outlined in instruction No. 1, which included premeditated design.

The instruction requested by the defendants was as follows:

"They [the jury] must believe beyond a reasonable doubt that, if either of the defendants struck the blow, they did so with the premeditated design to' destroy the sight of the eye, and unless you so find, your verdict should be not guilty, in this case."

The statement of the offense as requested in this instruction is not the law; the language of the statute is "with premeditated design to injure another."

Finally, it is contended that remarks of the special prosecutor in his closing argument in the case were improper and prejudicial. This assignment of error cannot be considered, for the reason that the so-called disparaging remarks of the special prosecutor are not sufficiently shown in the record. The exact language used should have been set out in full in the record, along with that part of the opposing argument to which it referred. The statement, made in the closing argument, that certain of the things said by the opposing attorney in his argument were "nothing but bosh and slop," may or may not have been prejudicial, depending largely on what opposing counsel said. Often disparaging replies are provoked by the complaining party. The whole, or such parts, of both arguments as relate to the matters complained of, should be

set out in the exact language used by the orators, in order to enable this court to' intelligently decide the import and effect of the language used. Here the record recites excerpts and conclusions only, which is not sufficient. An attorney, in his argument to the jury (and to the courthouse fans there assembled, has a right to criticise the logic of his opponent's argument; he may use oratorical flourishes and figures of speech in denouncing the defendant or his witnesses, so long as it is predicated upon the testimony introduced or their conduct or demeanor at the trial. In analyzing the testimony, he may state that it is his personal belief that the defendant is guilty as charged, and that his witnesses testified falsely. If he should indulge in invective and personal abuse not warranted by the testimony, the court should, on request, admonish the jury to disregard such remarks, and in extreme cases the court should, in the absence of the jury, reprimand the attorney making such remarks. From what appears here we cannot say that the remarks of which complaint is made were prejudicial. Sanditen v. State, 22 Okla. Cr. 1, 208 Pac. 1040; Tillman Jones v. State, 20 Okla. Cr. 154, 201 Pac. 664; other cases cited in Shive's Digest, p. 108.

Though the evidence in some particulars is conflicting, there is much testimony indicating that these defendants, with a common purpose to do bodily injury, violently assaulted the prosecuting witness, permanently destroying the sight of one of his eyes.

Finding no prejudicial error in this record, the judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.