## HENRY GRIFFIN v. STATE.

No. A-10276.   Sept. 13, 1944.

(151 P. 2d 812.)

Harry D. Pitchford and Tom Payne, both of Okmulgee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Jack Pitchford, Co. Atty., of Okmulgee, for defendant in error.

BAREFOOT, J. Defendant, Henry Griffin, was charged in the superior court of Okmulgee county with the crime of murder; was tried, convicted, sentenced to serve a term of life imprisonment in the State Penitentiary, and has appealed.

For reversal of this case, it is contended:

First, that the arguments before the jury of the county attorney and the assistant county attorney were such as to create passion and prejudice in the minds of the jury, in view of the facts in the case; and

Second, that the court erred in refusing to give a requested instruction.

It is first necessary to give a short statement of the facts.

Defendant was charged with killing his wife, Ella Griffin, in Okmulgee county, on the night of February 4, 1942, by shooting her with a .38 calibre pistol. The con-

viction was based upon circumstantial evidence. The parties were negroes. The deceased and defendant resided in the city of Okmulgee, and had been married about five years. She had been sick for some time, and was the owner of certain property, consisting of a home and a small grocery store, and other property.

On the date of the killing, defendant had taken his wife for an automobile ride, and they were traveling upon a rough road about two miles from the city of Okmulgee. It was about 9 o'clock at night. There was a scream, a shot, followed by several other shots. The defendant appeared at a house about a quarter of a mile away, and claimed that there had been an attempted hijacking. Upon investigation the wife was found dead on the road, and the automobile standing some 20 feet from the body. The woman had been shot several times.

Defendant claimed that he and his wife were hijacked by two young white men, who came up in a car behind the car driven by defendant, and that the shots that killed deceased were fired by one of the hijackers. He testified that a black purse belonging to the deceased, and containing about $32, was taken.

Dr. James E. Guess, who examined the body, testified that five shots had entered the body of deceased, one entering the left side of the back of the neck and coming out on the right side, and that there were powder burns where this shot entered.

John Forbes, a deputy sheriff, who made an investigation of the killing at the scene and on the night it happened, testified fully with reference to the condition of the premises, and a map was drawn with chalk on the floor of the courthouse and used in testifying, and it is therefore hard to distinguish exact locations and dis-

tances from the record. This witness also testified to statements made by the defendant with reference to the happenings at the time of the killing.

In order to discuss the questions raised in this appeal, it is unnecessary to go too much into detail.

Defendant testified that immediately after the shooting he went to the home of a man by the name of Casenough, and with Casenough and his boys accompanying him, returned to the car. Defendant stated that he had left the motor, heater, and lights on, and that when he returned the lights were dimmed, the motor was off, and the heater was still running. The car had been moved about 60 feet, and they found the body of his wife 15 or 20 feet up the road. Defendant attempted to describe the hijackers, but no one was ever apprehended.

The circumstances relied upon by the state to uphold the conviction of defendant, other than as above stated, were the testimony of the officers who made the investigation on the night of the killing that they found tracks of only one car—that of the defendant—although defendant had stated that the hijackers drove up by the side of the car in another automobile.

August Casenough, a brother-in-law of defendant, who went with him from his home to the scene of the killing, testified that when he arrived the doors of the car were open and that the heater and motor were not running. The defendant testified that one of the hijackers had hit him with a gun and this witness testified that defendant's mouth was bleeding, and he had one bad eye. A doctor also testified to treating the defendant on the night of the killing.

The state presented a witness by the name of Frankie Stevens, who testified that she lived about a quarter of a

mile from the scene of the killing; that she heard a woman scream, then a shot, and a few seconds later three or four more shots; that she looked down towards the road and saw the lights of a car which was headed west; that she saw the lights of only one car; that she did not see anyone run out in front of the lights.

The gun with which deceased was killed was not recovered and introduced in evidence. The state proved by Earl Long that in January, 1942, just prior to the killing, he had left a .38 calibre owl-headed pistol with the defendant for the purpose of sale. About a week later he went to defendant for the gun, and was informed by defendant that he had let a fellow have it for the purpose of trying it out, and that if it was satisfactory, the boy would buy it. This was about two weeks prior to the killing. He never recovered the gun. The evidence showed that the bullets which killed deceased were from a .38 calibre pistol.

The sheriff of Okmulgee county testified that the defendant stated he did not know the name of the party to whom he delivered the gun; that he did not know his whereabouts, and could give no description of him that would enable the officers to locate either the party or the gun.

The state introduced as a witness a niece of the deceased, who testified that the deceased owned five purses, but only one black one, and that it was found by her in a drawer in the home of deceased, after the killing. She also testified that deceased owned a grocery store, the house where she was living, and other property. She had heard deceased and defendant have arguments, and talk about a separation. She also testified to a conversation with defendant while he was in jail, in which defendant

told of a conversation between himself and deceased, when deceased had expressed the intention of seeing a lawyer and making a will, and defendant had replied: "Don't worry about your will; if anything happens I will do what is right about your property."

Defendant offered a number of substantial witnesses who testified to his good character and reputation. Also a servant who had worked in their home and who testified to their getting along well; never having heard them fussing; that deceased told her on the evening of the killing that defendant was going to take her out for a drive; and that deceased had two black purses.

Defendant denied the killing, and his testimony has already been referred to. He testified that his wife was killed by one of the hijackers.

We are of the opinion that the evidence in this case is sufficient to sustain the judgment and sentence. It is true that it is based upon circumstantial evidence, but the jury, having seen the witnesses upon the stand and having observed their demeanor, having heard the conflicting testimony that was given in this case, and having had an opportunity to examine the map which gave the exact location of the cars, the tracks, and other information pertaining to the killing, was in a much better position to judge this testimony than is an appellate court. The evidence with reference to the pistol and the bullets found in the body of deceased; the testimony of Doctor Guess that one of the shots entered to the left side of the neck of deceased and emerged on the right side and that there were powder burns, was strong circumstantial evidence against the defendant, especially in view of his evidence that the one who shot his wife was on the opposite or right side. While this evidence is circumstantial, we do not

feel justified in holding that it was insufficient to sustain the judgment and sentence.

It is contended that the court erred in refusing to give the following instruction:

"You are instructed that the state is not required to prove a motive for crime, but in this connection, you are instructed that upon failure to prove a motive, that it is circumstance in favor of the accused; and if the state fails to prove a motive, and this failure raises in your mind a reasonable doubt as to the guilt or the innocence of this defendant, you should resolve that doubt in his favor and acquit him."

The question of motive is a question of fact for the consideration of the jury, to be deduced from the evidence presented. As stated in the first sentence of the requested instruction, the state is not required to prove a motive for crime. It does not follow, however, that where a motive is not proven, an instruction should be given by the court that this raises a reasonable doubt as to the guilt of defendant, or that it is a circumstance showing defendant's innocence. One may be convicted of murder where no motive is proven. Fry v. State, 78 Okla. Cr. 299, 147 P. 2d 803.

In the case of State v. Brown, 168 Mo. 449, 68 S. W. 568, 576, the court had under consideration a requested instruction very similar to the one here presented, and it was there said:

"An instruction was asked by defendant, and refused by the court, which reads this way: 'The jury are instructed that when the evidence fails to show any probable motive to commit the crime charged on the part of the accused, this is a circumstance in favor of his innocence; and in this case, if the jury find, upon careful examination of all the evidence, that it fails to show any probable motive on the part of the accused to commit the crime

charged against him, then this is a circumstance which the jury ought to consider, in connection with all the other evidence in the case, in making up their verdict.' This instruction was properly refused, because a man is not to be acquitted of crime simply because his motive for perpetrating it cannot be discovered. State v. David, 131 Mo. [380], loc. cit. 397, 33 S. W. 28, and subsequent cases."

With reference to the contention that the arguments presented by the county attorney and his assistant were such that caused the defendant to be prejudiced to the extent that demands a reversal of this case, we have read the record, which contains these remarks.

In the first place, there was no objection and exception to the statements, as has so often been held necessary by this court, with the exception of one statement made by the assistant county attorney. He made reference to a case formerly tried in Okmulgee county in which no motive had been proven, and stated that the defendant in that case was then in the penitentiary. This was improper argument in this case, and the court should have so admonished the jury. However, it is not such as would cause a reversal of the case, under the facts and circumstances here presented. There is nothing to show that defendant was prejudiced by this statement. Here the defendant was charged with murder. This was the only charge presented to the jury by the instructions of the court. The only punishment that could be inflicted under the law was death, or a sentence of life imprisonment. The jury did not give the death sentence, but only inflicted the lightest penalty they could give under the law. This verdict did not indicate they were acting from passion and prejudice, if they believed defendant was guilty under the evidence submitted.

As above stated, the argument made by the county

attorney contained some statements which should not have been made, and concerning which the Attorney General in his brief states, "We think some of these statements were improper and should not have been made." Counsel for defendant made no objection, and as above stated, we do not think they were such as to constitute reversible error in view of the record here presented.

It has often been held that in considering the statement or argument of the county attorney, it will be considered in the light of all of the evidence in the record, and to constitute reversible error it must be upon some material point which injuriously affected the defendant's rights. Williams v. State, 4 Okla. Cr. 523, 114 P. 1114; Morgan v. State, 9 Okla. Cr. 22, 130 P. 522; Williams v. State, 19 Okla. Cr. 307, 199 P. 400; Sherman v. State, 20 Okla. Cr. 306, 202 P. 521; Payne v. State, 21 Okla. Cr. 416, 209 P. 334; Murray v. State, 24 Okla. Cr. 113, 217 P. 891; McCarron v. State, 61 Okla. Cr. 264, 67 P. 2d 461; Chesser v. State, 63 Okla. Cr. 84, 73 P. 2d 191; Porter v. State, 76 Okla. Cr. 16, 133 P. 2d 903.

We are of the opinion that the judgment and sentence of the superior court of Okmulgee county should be affirmed; and it is so ordered.

JONES, P. J., concurs. DOYLE, J., not participating.