STATE OF IOWA, appellee, v. ARLENE VIOLET SHIPLEY, appellant.

No. 51957.

November 15, 1966.

Sidney C. Levine, of Des Moines, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett, Assistant Attorney General, and Ray Fenton, of Des Moines, County Attorney, for appellee.

954

MOORE, J.—On May 19, 1965, defendant, Arlene Violet Shipley, was indicted in Polk County charged with murder as defined in sections 690.1 and 690.2, Code 1962, to which she entered a plea of not guilty. On trial the jury returned a verdict finding her guilty of the included offense of manslaughter. June 21, 1965, the trial court sentenced her to be confined in the women's reformatory for a period not to exceed eight years and fined her $50. Defendant has appealed. We affirm.

Appellant asserts the trial court erred in failing to instruct on her theory that her shooting of Ralph Stewart was an accident and the instructions on implied malice, defendant's credibility and reasonable doubt were erroneous.

It is not contended, nor could it well be argued, that the verdict of guilty is without sufficient support in the evidence. Very little conflict appears therein. We shall not, therefore, attempt to rehearse the testimony in great detail. For many months prior to April 11, 1965, defendant and Ralph Stewart lived together without any pretense of being married. Stewart was married to another woman. He worked at a packing house during the week and with defendant's help did an extensive bootlegging business on weekends in the home where they lived in southeast Des Moines. They were assisted by one Anna Miller who usually stayed in the home over weekends. Consumption of their liquor was not limited to their customers. They drank to excess at which times, according to defendant, Stewart ceased being his kind considerate self and struck her on several occasions. He often told her he was going to send her body to Estes. Estes is a funeral home in Des Moines engaged primarily in burial of negroes. Defendant is a caucasian. She testified she believed he so intended. Others testified Stewart often jokingly made such statements.

Shortly after 9 p.m. April 11, 1965, the Des Moines Police Department received a report a man had been shot at 609 S.E. Fifth Street. Upon their arrival they found defendant in front of the house screaming for help and shouting she did not mean to shoot him. She told them Stewart had struck her earlier that day, they had been arguing that evening, she was afraid he was going to harm her and that she shot Ralph Stewart. She

kept exclaiming: "Please don't send me to Estes." Analysis of defendant's blood taken shortly thereafter showed 221 milligrams percent or 121 milligrams over the recognized standard. Stewart's blood taken later that evening at Estes Funeral Home showed 131 milligrams percent.

When the police officers went into the house they found the body of Ralph Stewart on the kitchen floor. He had been shot in the head. It caused his death. They saw an accumulation of beer cans and whiskey bottles on the table. Anna Miller had remained in the house. As a witness she described the gun used by defendant and related the events leading to the shooting. She was in another part of the house when defendant shot Stewart.

Defendant testified that evening there was an argument between her and Stewart because of his failure to insist on payment from a renter and his refusal to padlock the rented house. She decided to call a member of her family to come and get her. She was going to leave Stewart.

Defendant further testified when she went to the phone she found Stewart talking on the kitchen extension, he said "get the hell off the phone" and the other party called her a "white bitch". She then went to the kitchen and demanded that Stewart call back and make the party apologize. Anna Miller testified Stewart was attempting to make such a telephone call when defendant shot him. Defendant had put her gun in her pocket earlier that evening. Defendant testified it was her gun and it was necessary to pull the hammer back before it would discharge.

Defendant on direct examination testified she walked into the kitchen, started to cry and told Stewart she did not deserve being called such a name. She stated:.

"He had the telephone receiver in his hand and told me to shut up and said 'Estes would get my body' or something to the effect Estes would, and took a step towards me with the phone raised and I jumped up and got the gun and it went off. He had taken the receiver away from his ear and had it raised and slightly turned. I was afraid he was going to hit me with the telephone and might kill me with it. I was afraid

he was going to hit me in the head. I knew he was going to hit me with the phone. I knew that because he had hit me before. When I pulled the gun out of my pocket, I was trying to protect myself to get by him. I had to go in front of him and couldn't go to my left because there was a stove there. I couldn't go to the right because the table was there. I did not mean to shoot him. I just meant to protect myself until I could get past him. I don't remember anymore. I was down on the floor, had my arms around him, talking to him, telling him I loved him and that it was an accident."

On cross-examination defendant testified:

"At the time I fired the shot, he was looking at me. I could not say I was directly in front of him, maybe just slightly to one side. He wasn't standing at the phone talking, looking off to the north, when I shot him. I did not have my hand on the gun when I went in the kitchen. I just pulled the gun automatically to protect myself. I never meant for the gun to go off. I didn't pull the trigger. It just went off. Up to this point Ralph hadn't touched me on this day. He had the phone ready to hit me. I knew he was going to hit me in the head because he had hit me there before. I didn't say anything when I had the gun pointed at him. I don't remember how long it took me, the time he took the step toward me to jump up, pull the gun from my pocket and pull the trigger; it was all done in a matter of seconds."

I. Defendant's requested instruction 2 stated that if defendant drew the pistol under circumstances that justified her doing so under the law of self-defense and while so drawn it went off accidentally, she would be entitled to a verdict of not guilty. Requested instruction 5 was to the same effect except it cautioned the jury defendant did not bear the burden of proving the alleged accidental discharge but it was incumbent on the State to prove beyond a reasonable doubt the gun in question was not discharged accidentally. Defendant took proper exceptions to the trial court's failure to give these instructions.

The instructions given included the statement the State had the burden of proving beyond a reasonable doubt defendant acted wilfully, unlawfully and feloniously. Feloniously was de-

fined as meaning with criminal intent. In instruction 12 the trial court told the jury that if they found defendant by reason of intoxication did not knowingly, wilfully and intentionally murder Ralph Stewart then it would be their duty to acquit her.

Instruction 13 includes the following:

"It is the claim of the defendant that she did not unlawfully kill the said Ralph Stewart; that whatever the defendant did at the time and place in question was done by her in lawful self-defense, that is, for the purpose of protecting herself from an alleged assault made on her by . . . Ralph Stewart.

"In this connection, you are instructed that the burden is upon the State to establish beyond a reasonable doubt not only that the defendant committed the act charged in the indictment and inflicted upon the person of . . . Ralph Stewart the alleged injury which caused . . . Ralph Stewart's death, but the State must also establish beyond a reasonable doubt that said injury was not inflicted by the defendant in self-defense."

Thus it appears the court required the jury to find defendant acted wilfully and with criminal intent and further the State had the burden of proving beyond a reasonable doubt that whatever she did with the gun was not done in self-defense.

Wilfully ordinarily means intentionally as distinguished from accidentally. Clark v. Sherriff, 247 Iowa 509, 515, 74 N.W.2d 569, 573; Huston v. Huston, 255 Iowa 543, 548, 122 N.W.2d 892, 896; State v. Wallace, 259 Iowa 765, 145 N.W.2d 615.

We believe the instructions when read as a whole presented defendant's theory of the case and were perhaps more favorable to defendant than requested instructions 2 and 5.

We have consistently held instructions given must be taken and construed as a whole and if the point raised in the requested instruction is substantially given or covered by those given it may properly be refused even if it contains a proper statement of the law. State v. Doudna, 226 Iowa 351, 360, 284 N.W. 113, 117; State v. Anderson, 239 Iowa 1118, 1137, 33 N.W.2d 1, 11; State v. Katz, 241 Iowa 115, 120, 40 N.W.2d 41, 45; State v. McKay, 256 Iowa 993, 995, 129 N.W.2d 741, 742;

State v. Hill, 258 Iowa 932, 938, 140 N.W.2d 731, 735. See also 23A C. J. S., Criminal Law, section 1333.

We find no reversible error was committed in refusing to give requested instructions 2 and 5 as the trial court gave the substance thereof in its instructions.

II. Defendant contends the trial court erred in failing to give her requested instruction 3. She asked the jury be instructed the State had failed to prove any motive for the crime charged and that lack of such proof was a circumstance in favor of defendant's innocence.

██ In State v. Knox, 236 Iowa 499, 516, 517, 18 N.W.2d 716, 724, we define motive and point out it is not an element of crime and proof thereof is not essential to sustain a conviction but recognize proof of motive may be of probative value especially in cases of circumstantial evidence. See also 21 Am. Jur.2d, Criminal Law, section 85. This, however, does not reach defendant's contention. She cites no authority to sustain her contention nor have we found any such pronouncement by this court.

Several courts from other jurisdictions have, however, rejected the same or a similar proposition as contained in defendant's requested instruction 3.

State v. Glenn, Mo., 262 S.W. 1030, 1033, states:

" 'The motives for crime are so numerous, so hidden, and often so utterly unreasonable that it is impracticable to require that they shall always be made manifest.'

"The failure to show motive is a circumstance in favor of the defendant's innocence. * * *

" 'It was not error to fail to instruct on motive, which is but one of all the circumstances to be considered by the jury, and does not require a special instruction.'

"The instruction is argumentative, and a comment on the evidence, and was properly refused."

In State v. Eisenstein, 72 Ariz. 320, 336, 235 P.2d 1011, 1022, it is said: "The ground for this specification lies in the fact that the trial court refused to give an instruction formulated by the defendant to the effect that if the evidence failed to show any motive on the part of the defendant to commit the crime

charged, such want of motive, if any, was a circumstance to be considered in favor of defendant's innocence. The general rule is that 'If the offense is made out clearly, it is not necessary to prove motive, and the court properly may so charge, or may refuse a request to charge to the contrary.' "

State v. London, 131 Mont. 410, 434, 310 P.2d 571, 585, states: "We are impressed with the holding of the court in State v. Aitken, 240 Mo. 254, 144 S.W. 499, 503, wherein it is stated:

" 'Motive is a material consideration in a case of circumstantial evidence, and is a proper matter for argument before the jury. Its absence does not prove innocence; nor does the mere fact that it exists establish guilt. Motive is a circumstance for or against the defendant as the jury may find that it does not or does exist; and is to be weighed together with all other facts and circumstances in evidence. It does not follow from the fact that a circumstance is material that a jury must be instructed especially upon that circumstance. Nor does it follow that failure to instruct is error because it would not be error to instruct on the point. * * * It was not error to fail to instruct on motive, which is but one of all the circumstances to be considered by the jury, and does not require a special instruction.' This holding was followed by that court in State v. Glenn, Mo., 262 S.W. 1030. Therein it was stated that such instructions are argumentative, and a comment on the evidence."

For like holding see Griffin v. State, 79 Okla. Cr. 85, 151 P.2d 812; State v. Riggle, 76 Wyo. 1, 298 P.2d 349, 300 P.2d 567.

We find no reversible error in the trial court's refusal to give defendant's requested instruction 3, especially in view of her being found guilty of manslaughter.

■ III. Defendant next argues the following paragraph of the court's instruction 5 is erroneous. "Implied malice is that which is inferred from the acts and conduct of the accused and the means employed by him in doing an unlawful and injurious act without just cause or excuse. When one assaults another with a dangerous and deadly weapon in such a manner as will be likely to kill, it will be assumed in the absence of evidence to the contrary, that the assault was made with malice."

The obvious and complete answer to this claim is that defendant could not possibly be prejudiced as malice is not an element of manslaughter and the court so instructed. We have, however, approved such language. State v. Jiles, 258 Iowa 1324, 142 N.W.2d 451, and citations. Defendant's contention this paragraph shifts the burden of proof to her is without merit.

IV. Defendant asserts instruction 14 given by the trial court singles out the question of her credibility and is erroneous. Instruction 14 reads:

"The law gives the defendant the right to testify in his own behalf, and it is for the jury to determine the weight to be given to his testimony, as in the case of any other witness.

"In considering and weighing his testimony you are not required to receive the testimony of the defendant as true, but to give it full and careful consideration, and determine whether it or any part of it is true or false, and whether such testimony is given by the defendant in good faith or for the purpose of avoiding conviction. You may take into consideration his interest in the outcome of this case as a person charged with a crime, and you should give his testimony such weight as you deem it entitled to in view of all of the facts and circumstances in evidence before you."

This identical instruction and the same attack against it were carefully considered by this court in State v. Ford, 259 Iowa 744, 751, 145 N.W.2d 638, 642, and the instruction was approved by the majority opinion.

In Ford we extensively review our long line of cases and those of the Federal Courts which approve giving such an instruction. We find no necessity to repeat that review here. Our attention has not been called to any authority which directly holds giving such an instruction is reversible error. While some members of this court feel this instruction might well have been omitted we are not disposed to hold giving it was reversible error.

V. Defendant's last assigned error is the trial court erred in overruling her objections to instruction 2. It reads:

"The defendant is presumed to be innocent of the offense

charged, and the burden is upon the State to overcome this presumption and establish his guilt thereof beyond a reasonable doubt. No mere weight of evidence is sufficient unless it excludes all reasonable doubt as to his guilt. The proof of guilt must be inconsistent with any other rational supposition.

"A reasonable doubt may be suggested by or arise out of the evidence offered and received upon a trial, or it may arise from the lack or want of evidence in the case on the part of the State. Such doubt, however, must be real, not captious or imaginary; not forced or artificial; but must be a doubt which, without being sought after, fairly and naturally arises in the mind, after considering all of the evidence in the case, as well as the lack or want of evidence, if any. The proof is sufficient if it establishes guilt to a moral certainty, such a certainty as fully and fairly convinces the understanding of the jurors."

Defendant's position is the definition of reasonable doubt is meaningless and that nowhere is the jury told how to apply it to the evidence. We find no merit in either contention.

Instruction 18 includes this:

"You are to try and determine this case according to the law as given you in charge by the court in these instructions and the evidence produced and submitted to you in open court, taking into consideration all the facts and circumstances as disclosed by the evidence, as well as the lack or want of evidence on the part of the State, if any, and you will consider all fair and reasonable inferences and deductions which may be drawn therefrom.

"You are the sole judges of the facts in this case, and the court instructs you as to the law. The court has not, however, attempted or intended to embody in any one instruction all of the law applicable to the case. You are to consider and construe all of the instructions together and apply them as a whole to the evidence in the case."

We believe this properly advised the jury how to construe the instructions, including instruction 2, and apply them to the evidence.

Defendant argues instruction 2 should not have been given because it is confusing and misleading. This court in State v.

Ostrander, 18 Iowa 435 (1865), and in many cases thereafter has approved similar instructions.

State v. Bodekee, 34 Iowa 520, 522, states: "The court gave the usual instruction, that if the jury were satisfied, beyond a reasonable doubt, of the guilt of the accused as charged in the indictment, they should find him guilty. They were told that a doubt which would authorize an acquittal should be actual, substantial, rational and conscientious, and not artificial and forced, and that proof is sufficient to require conviction 'if it establishes guilt to a moral certainty, such a certainty as fairly and fully convinces the understanding of the jurors.' These instructions are assigned for error. We discover no well-founded objection to them. They clearly express familiar rules of law."

State v. Wagner, 207 Iowa 224, 227, 222 N.W. 407, 409, 61 A. L. R. 882, says: "The court charged the jury that reasonable doubt 'does not mean a captious, strained, or unnatural doubt, nor one raised by some forced or unnatural meaning given to the evidence, or one which is manufactured from sympathy for a defendant, or to excuse the guilt of one of whose guilt there is no reasonable doubt. But it means a doubt which, without being sought after,' etc. Defendant argues that the instruction is misleading; that the expressions 'manufactured from sympathy for a defendant' and 'it does not mean a captious, strained, or unnatural doubt, nor one raised by some forced or unnatural meaning,' would easily lead the jury to believe that they must manufacture a doubt from sympathy for the defendant, and could not have any reasonable doubt unless they did so. We are of the opinion that defendant's objection to the instruction is untenable. An instruction containing the same language here objected to—though this precise point was not made—was approved in State v. Krampe, 161 Iowa 48, 55, followed in State v. Berry, 192 Iowa 191, 195. See, also, State v. Lindsay, 161 Iowa 39, 44."

State v. McGee, 207 Iowa 334, 342, 221 N.W. 556, 559, states: "Reasonable doubt was defined by the trial court. As part of the definition, a precautionary instruction was given, to the effect that such 'doubt' does not mean one that is forced, strained, captious, or unnatural. Exception is taken thereto by

appellant. Approval of that instruction has frequently been made. State v. Lindsay, 161 Iowa 39; State v. Derry, 202 Iowa 352; State v. Schaffer, 74 Iowa 704; State v. Smith, 194 Iowa 639."

Some of our more recent cases which approve instructions similar to instruction 2 are State v. Parkin, 230 Iowa 991, 299 N.W. 917; State v. King, 232 Iowa 16, 4 N.W.2d 244; State v. Sauerbry, 233 Iowa 1076, 10 N.W.2d 544; State v. Blackburn, 237 Iowa 1019, 22 N.W.2d 821; State v. McCall, 245 Iowa 991, 63 N.W.2d 874.

We find no reason for reversal. Defendant had a fair trial. The case should be and is affirmed.—Affirmed.

All JUSTICES concur except MASON, RAWLINGS and BECKER, JJ., who dissent from Division IV and affirmance for reasons indicated in the dissent in State v. Ford, supra, 259 Iowa 744, 145 N.W.2d 638.

THORNTON, J., not sitting.