## JOHN LEE VS. THE STATE.

1. CRIMINAL LAW: *Practice: Counsel limited in argument.*
 Where counsel on both sides, in a criminal cause, are limited in their argument, and the rule is not applied arbitrarily, partially, or to the prejudice of the accused, no constitutional rights of the accused are violated. Such rules rest within the sound discretion of the court.

2. SAME: *Keeping prisoner in irons during the trial.*
 A prisoner undergoing trial should be free from shackles; but if the court or sheriff deem them necessary to prevent escape, may order them kept in irons during trial, and this will not be ground for reversal.

3. SAME: *Testimony of an accomplice: Severance.*
 When two persons are jointly indicted, and one pleads guilty and is remanded to await the further order of the court, the plea of guilty by the one amounts, virtually, to a severance, and he is presumed to be thereby rendered indifferent as to the result of the trial of his codefendant, and is, for that reason, a competent witness.

ERROR to the Circuit Court of *Colfax* County.

Hon. J. A. ORR, Judge.

Plaintiff in error, John Lee, and one David Boykin, were jointly indicted in the circuit court of Colfax county, at the February term, 1875, thereof, charged with the stealing of one bale of cotton, of the value of sixty-five dollars. Boykin pleaded "guilty," and Lee pleaded "not guilty." The court remanded Boykin to jail to await the further order of the court, and a jury was impaneled to try Lee. On the trial, Boykin was offered as a witness for Lee. The district attorney objected, and the objection was sustained, and this was assigned for error.

In the argument of the case before the jury, the court limited the counsel for the defense to thirty minutes, and the district attorney to fifteen minutes; and this is assigned for error.

The prisoner was put upon his trial in handcuffs (but no objection made at the time); the jury found the defendant guilty, and the court sentenced him to imprisonment for five years in the penitentiary. A motion was made for a new trial, which was overruled. It contained further grounds, only three of which

Briefs.

were considered by this court, and of which it is necessary to set out here, to wit:

"The court erred in allowing the sheriff to bring the prisoner into court, in the presence of the jury, with his hands fastened together by haudcuffs, and in keeping the prisoner thus in shackles before the court and jury during the trial."

"The court erred in limiting defendant's counsel to thirty minutes time in their argument to the jury."

"The court erred in excluding from evidence the testimony of David Boykin, offered on behalf of the defendant."

The overruling of the motion for a new trial is assigned for error.

*Barry & Brame*, for plaintiff in error:

It was error to exclude the testimony of Boykin; by this witness the accused proposed to prove that he had no connection with the crime. They were jointly indicted, and Boykin might have testified; he was competent. Code, 1871, § 779. It was error to keep the prisoner in irons during his trial, unless there was danger of escape. People *v.* Harrington, 42 Cal., 165; 4 Black. Com., 219; 2 State Trials by Hargrave, 230 and 245; Waite's Case, 1 Leach's Crown Cases, Com. Law. It was error to limit counsel for the accused to fifteen minutes each; it is without precedent. There were many cases to try, but if it took the whole term to try one case, the court had no right to deprive the prisoner, in that case, of a single right to economize time. Certainly, it cannot be pretended that the defendant could be heard in defense of the charge in such short time. It is folly to talk of the presumption of innocence and the boasted declarations of liberty under our constitution, that every man accused of crime shall be entitled to a fair and impartial trial, and shall be heard in defense of the charge, if the verdict and judgment in this case can be upheld.

*G. E. Harris*, Attorney General, for the state:

. It may have been improper to keep the prisoner in irons during his trial, unless there was danger of escape, but the sheriff is

responsible for the safe keeping of the prisoners in his custody, and the law is very stringent in holding him to his duty. The question addresses itself to the discretion of the court and the sheriff. The authorities cited by counsel do not sustain his position. The prisoner had a fair and impartial trial as disclosed by the whole record. There was no error in limiting counsel for the accused to thirty minutes in the argument when the district attorney was limited to fifteen minutes—only half the time allowed defendant's counsel — this was impartial, and is justified by the shortness of time and the amount of business on the docket; such rules are within the sound discretion of the court.

TARBELL, J., delivered the opinion of the court.

This case is brought here by bill of exceptions to the action of the circuit court in overruling the motion for a new trial. Fourteen grounds are stated as the basis of this motion. Of these, three are selected for brief comment.

The plaintiff in error and David Boykin were jointly indicted on a charge of grand larceny. The accused were jointly arraigned and both pleaded not guilty. Subsequently, the district attorney moved the trial of both, jointly, when Boykin withdrew his plea of not guilty, and filed a plea of guilty. Thereupon he was remanded to jail, and the trial proceeded as to the plaintiff in error. There was no order of the court for severance, or that the accused have separate trials. When the evidence on the part of the prosecution was closed, Boykin was offered as a witness by the plaintiff in error. Objection being made by the district attorney, the court refused to permit him to testify. This is assigned for error. The plaintiff in error was kept in irons in court during the trial. This is also assigned as error.

On the argument, counsel for the accused were limited to thirty minutes, and this constitutes the basis of another assignment of error.

With reference to the last point named, the constitution, art. I., sec. 7, guaranties, that "in all criminal prosecutions, the accused

shall have a right to be heard by himself or counsel or both."
It is claimed in argument, that the plaintiff in error was not so
heard.    Except the limitation of the time of counsel for present-
ing the case to the jury, the record shows that the plaintiff in
error had a full, fair, impartial and patient hearing at the hands
of the court and jury; no other haste or restriction than that
mentioned appears.    The reason assigned for the action of the
court in this instance is, the amount and importance of both
civil and criminal business demanding consideration during the
term.    The district attorney, in the case at bar, was limited to
fifteen minutes.    The same rule was applied in all other causes
before the court.

It is considered that this is a matter which admits of no adju-
dication.  The rule was not applied arbitrarily, tyrannically, with-
out just reason, in a spirit of partiallity and prejudice in a single
instance, but in all other causes as well, and for the more rapid
despatch of business.    It cannot be said that the accused was
not heard by himself and counsel or both.    A case might arise
calling for the action of this court, but in the present instance,
prejudice or injury is not shown.    There is nothing in the record
upon which this court can assume that the plaintiff in error was
injured or prejudiced by the restriction imposed upon counsel.
1 Bish. Cr. Pr., § 1005; 13 Cal., 581; 3 Leigh, 743; 10 Met.,
263; 9 Ind., 541.

The bill of exceptions makes this statement : "And during the
time of these proceedings, from the beginning of this trial to the
close thereof, the prisoner, Jno. Lee, sat at the bar handcuffed,
with iron handcuffs fastened about his wrists.    No objections
were made to this by the defendant or his counsel, and many pris-
oners were being brought in and out of jail, and whilst this sheriff
was sheriff, many prisoners had escaped."

Upon this statement it is assigned for error : "That the court
erred in allowing the sheriff to bring the prisoner into court in the
presence of the jury with his hands fastened together by hand-
cuffs, and in keeping the prisoner thus in shackles, before the
court and jury, during the trial."

It is contended that the right of a prisoner to appear in the presence of the court and jury free from shackles and bonds is one which the court is bound to enforce without demand, and hence the claim of error in the case at bar. This rule is quoted by counsel: " A prisoner is entitled to appear for trial free from all manner of shackles or bonds, unless there is evident danger of his escape;" and they cite People *v.* Harrington, 42 Cal., 165; 2 Hale's P. C., 219; 4 Bl. Com., 322; 6 State Trials, 230; Waite's Case, 1 Leach's Crown Cases, 36; see also Regina *v.* Douglas, 1 Carr. & M., 193 (109). Sir Matthew Hale in his history of the Pleas of the Crown, says: " The prisoner, though under an indictment of the highest crime, must be brought to the bar without irons, and all manner of shackles or bonds, unless there be a danger of escape, and then they may be brought with irons. But note, at this day they usually come with their shackles upon their legs, for fear of an escape, but stand at the bar unbound till they receive judgment."

A note to the foregoing text says: " By this it appears to have been one author's opinion, that upon whatever occasion a prisoner be brought into court, he ought not to stand there *in vinculis* till after his conviction, when he comes to receive judgment, not even at the time of his arraignment (for that is the time our author is here discoursing of), yet in Layer's Case, a difference was taken between the time of arraignment and the time of trial; and accordingly the prisoner in that case stood at the bar in chains during his arraignment."

Layer's Case, referred to, is found in 8 Mod., 82. Layer was indicted for treason. His counsel moved that the irons might be struck off his legs, and instanced the cases of Gordon, King, and others, where it had been so done before they pleaded, and argued that he was not obliged to plead until his fetters were taken off; and that it was the opinion of the late Ch. J. Holt that it ought to be so done; that this person was the first Tower prisoner that ever had irons on his legs; and that there were no such instruments there until now brought from Newgate.

The prisoner personally appealed to the court, also, for the removal of the irons, saying, with them on, and from pain and a restless night, he had not the free use of his reason; and that he hoped to have a fair and impartial trial as allowed by the law, without any undue severities.

The court answered that, as for the irons being taken from his legs, it is true that it was done in those cases cited by counsel, but it was when the prisoners had pleaded to their several indictments, and were to be tried on the same day; and that it would be to no purpose to insist on this matter for so little a time as the prisoner now had to stand at the bar; and as for taking them off in the Tower, the court would make no order, because, if they did, it might be an excuse to his keeper if he (the prisoner) should escape, therefore it must be left to his keeper's discretion how to use his prisoner, especially since he had already attempted to escape.

In Hawkins' P. C., vol. 2, p. 434 (book 2, ch. 28, sec. 1), it is said: "That every person, at the time of his arraignment, ought to be used with all the humanity and gentleness which is consistent with the nature of the thing, and under no other terror or uneasiness than what proceeds from a sense of his guilt, and the misfortune of his present circumstances, and therefore ought not to be brought to the bar in a contumacious manner, as with his hands tied together, or any other mark of ignominy and reproach; nor even with fetters on his feet, unless there be some danger of a rescue or escape."

In Waite's Case, 1 Leach's Cr. Cas., 36, "the prisoner at the time of his arraignment, desired that his irons might be taken off; but the court informed him that they had no authority for that purpose until the jury were charged to try him. He accordingly pleaded not guilty, and being put upon his trial, the court immediately ordered his fetters to be knocked off."

"Of arraignment and its incidents," Bl. in his Com., vol. 4, p. 322, ch. 25, has this: "The prisoner is to be called to the bar by his name, and it is laid down in our ancient books that though

under an indictment of the highest nature, he must be brought to the bar without irons, or any manner of shackles or bonds, unless there be evident danger of an escape, and then he may be secured with irons. But yet, in Layer's Case, A. D. 1722, a difference was taken between the time of arraignment and the time of trial, and, accordingly, the prisoner stood at the bar in chains during the time of his arraignment."

The general doctrine is declared in State *v*. Stalcup, 2 Ired., 50, that an officer who has arrested a prisoner under a stop warrant, has a right to tie him, if he believes it necessary to secure him, and of this necessity he is himself the sole judge. But if the officer is guilty of a gross abuse of this authority, that is, if he does not act honestly, according to his sense of right, but, under the pretext of duty is gratifying his malice, he is liable to indictment.

The only case in the United States, which, after diligent search, has been found, wherein the question under consideration has been discussed, is that of the People *v*. Harrington and Minor, 42 Cal., 165. While the jury was being called and impaneled to try the cause, the defendants were in court in irons. Counsel asked that the irons be removed from the limbs of defendants during trial. " But the court refused to order the same to be done, and decided that defendants should be tried while in irons, no circumstances or facts being shown to the court why a different rule should be enforced in this cause than any other, the court being of opinion that no rights of defendants were violated by being tried in irons without their consent." To this ruling exceptions were taken, and a writ of error prosecuted.

On error, it was insisted that by the action of the court below in refusing to direct the manacles which bound the prisoners to be removed while they were in court, upon trial, or compelling them to be tried while in irons, without any apparent or pretended necessity therefor, the accused were deprived of a substantial legal right. In answer, the attorney general claimed that the action of the court complained of was no part of the trial of the

case, and could not be reviewed on error.   The appellate court was of the opinion, that any action of the court during the progress of a trial for felony which deprives the defendant of a substantial legal right, or to any extent, to his prejudice, withholds or abridges a substantial legal or constitutional privilege of a defendant, or by him claimed on the trial, is a proper subject of review on appeal or writ of error.   The court then state the question before them to be, whether a prisoner placed upon his trial for a felony can, as a legal or constitutional right, demand that during the trial, while before the court and jury, his limbs should not be manacled, or that he should not be *in vinculis*, during his trial, there being no pretense of necessity for such restraint to secure his presence in court.   The English authorities are then cited, as also some legal statutes bearing upon the subject, and then it is added:   " A prisoner upon his trial in court is in the custody of the law, and under the immediate control of and subject to the orders of such court.   Should the court refuse to allow a prisoner on trial for felony to manage and control in person, his own defense, or refuse him the aid of counsel in the conduct of such defense, he would manifestly be deprived of a constitutional right, and judgment against him on such trial would be reversed.   *   *   Any order or action of the court which, without evident necessity, imposes physical burdens, pains, and restraints upon a prisoner during the progress of his trial, inevitably tends to confuse and embarrass his mental faculties, and thereby materially to abridge and prejudicially affect his constitutional right of defense; and especially would such physical bonds and restraints in like manner materially impair and prejudicially affect his statutory privilege of becoming a competent witness and testifying in his own behalf."   Such is the reasoning of the court in that case, and it is held therein that " to require a prisoner, during the progress of his trial before the court and jury to appear and remain with chains and shackles upon his limbs without evident necessity for such restraint, for the purpose of securing his presence for judgment, is a direct violation of the

common law rule." In that case special stress was placed upon the want of evident necessity for chains, or in the language of the court, there " was no pretense of necessity for the manacles and chains upon the defendants during their trial, to secure their presence to answer the judgment," and for that cause alone, the judgment was reversed and a new trial awarded.

It is conceived that a stronger reason than any furnished by the foregoing authority, why a prisoner ought to be relieved of shackles during his trial, might be found in the knowledge, that, under some circumstances, shackles and bonds are degrading and pernicious in their affect upon the wearer, and, in the mind of others, but tend to contempt and prejudice ; while, under other circumcumstances, they would create sympathy and favor. Doubtless, also, a trial might occur, wherein the shackles of the accused would have no thought or influence on the minds of the jury or the public.

The rules indicated by the authorities, however, are founded in justice and reason. With the references and quotations herein, this portion of criminal law may be safely committed to courts and sheriffs, whose acts are alike open to review in the courts and at the ballot box.

The only other point to which reference is deemed necessary is, the refusal of the court to permit the codefendant of the plaintiff in error to testify as a witness on the request of the party on trial. The codefendant has pleaded guilty, and thereupon was remanded to the custody of the sheriff to await sentence. In this the court erred. 1 Bish. Crim. Pr., §§ 961, 962 and cases cited in notes ; Code, § 779. The case at bar is distinguishable from those in which the court may exercise a discretion in permitting or refusing the entry of a *nol. pros.* as to one of several defendants being jointly tried, or in permitting or refusing the submission to the jury of one of several defendants, being jointly tried, and against whom the evidence is slight, for the purpose of an acquittal, and to make him a witness. The cases cited make these distinctions clear, and they are founded in reason. Here is a virtual sever-

ance by the plea of guilty. This party, in theory, is thus rendered indifferent. And besides, see the code, § 779. See also, 37 Miss., 422, and 39 id., 570 and the authorities therein. The codefendant, who had pleaded guilty, should have been allowed to testify as a witness on the request of the plaintiff in error. The action of the court in refusing this request is the only error shown.

Judgment reversed; cause remanded, and a new trial awarded.