### J. A. COPUS v. STATE.

No. A-4133.    Opinion Filed March 27, 1924.

(224 Pac. 364.)

(Syllabus.)

1. **Abortion—Negative Exception in Statute—Manner of Proof Immaterial.** Where a statute makes it a felony to commit an abortion on a woman quick with child "unless the same shall have been necessary to preserve the life of such mother," this qualifying clause is a negative exception, sufficiently proved in this case.

   (a) That being true, we are not required in this case to decide whether the obligation to prove such exception is upon the state in the first instance, or whether proof to the contrary is a matter of defense for the defendant.

2. **Appeal and Error—Evidence—Testimony Admissible Though Incompetent on Another Issue—No Reversal if Other Facts Prove Issue, or if Error Invited.** Where testimony is offered tending to explain some disputed issue, it need not be excluded because it is inadmissible, or even prejudicial, as applied to some other issue; and the admission of such testimony will not operate to reverse a conviction where there was other undisputed proof of the same facts, and where the person complaining was in part responsible for the objectionable answers given.

3. **Trial—Improper Argument Provoked by Opposing Counsel.** Where the record contains portions only of the argument of counsel, and it appears that the remarks of which complaint

is made were probably provoked or brought on in answer to remarks made by opposing counsel not appearing in the record, the verdict ordinarily, under such circumstances, will not be disturbed.

Appeal from District Court, Muskogee County; Benjamin B. Wheeler, Judge.

J. A. Copus was convicted of manslaughter in the first degree, and he appeals. Affirmed.

S. M. Rutherford, James W. Cosgrove, Alvin F. Molony, and P. A. Gavin, for plaintiff in error.

The Attorney General and Baxter Taylor, Asst. Atty. Gen., for the State.

BESSEY, J. This is an appeal from a judgment of conviction in which plaintiff in error was sentenced to serve a term of four years in the state penitentiary at McAlester. The record in the case is remarkable in two particulars; remarkable for the evidence it contains, and for the absence of proof ordinarily supplied in such cases by those best qualified to testify and furnish that proof.

The plaintiff in error, herein designated the defendant, was charged with and convicted of manslaughter in the first degree under the provisions of section 1743, Comp. Stat. 1921, providing as follows:

"Any person who administers to any woman pregnant with a quick child, or who prescribes for such woman, or advises or procures any such woman to take any medicine, drug or substance whatever, or who uses or employs any instrument or other means with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, is guilty in case the death of the child or of the mother is thereby produced, of manslaughter in the first degree."

The testimony on the part of the state shows that the defendant was a dentist who practiced his profession in the

city of Muskogee; that a practicing physician in that city was informed by the defendant on July 5, 1921, that the defendant was in trouble with a girl out on a certain street in Muskogee, and that he wanted the physician to help him out; that the defendant had performed an operation on the woman to produce an abortion, and that she needed the services of a physician. The physician then went to the place as requested, and found the woman with a very high temperature and abnormal respiration, and she informed him that an operation had been performed to produce an abortion. The physician, as is customary in such cases, called in another physician for consultation, and the two caused her to be removed to a hospital, where they assisted in the delivery of a still-born child, the fetus being about five months old. An examination disclosed that septic poisoning had set in. It was the opinion of both these physicians, based upon the examination made and the symptoms present, from their experience and practice in such cases, and from statements made by the woman herself, that the fetus had been quick a few days prior to that time, and that life had been destroyed by means of instruments recently used for the purpose of producing an abortion.

The hospital and physician's fees and fees for medical attention, to the amount of $150, were paid or satisfied by the defendant. In anticipation of the death of the woman from septic poisoning, her affidavit was taken in the presence of the physicians. This affidavit was not introduced in evidence, and is not in the record, so that this court is not advised of its contents or import. The woman survived, and was in attendance at the trial, was placed on the witness stand by the state, and then excused without having had any questions propounded to her.

The defendant denied that he either committed or advised an abortion. He stated that the woman about five months prior to the time of the alleged abortion had consulted him about some dental work; that she had several defective and ulcerated teeth, and that he contracted to treat her and make such extractions as appeared necessary, and to do certain special bridge work for her; that the cost of this work was to be $400, and that because the woman was of unknown financial standing he exacted the payment of this sum in advance; that under this arrangement he rendered some service by treating her mouth and extracting some teeth, but that she was physically unable to go on with further extractions and treatment; that later, when she was taken to the hospital, her husband came to defendant's office and reminded him that he had performed only a small part of the dental services contemplated, and that he might never be called upon to complete the work; that the physicians and hospital attendants insisted upon immediate payment for services, and he asked defendant to refund sufficient money to pay these demands; that pursuant to this request defendant caused to be paid or satisfied the hospital and physicians' fees to the amount of $150; that he was under no obligation to do this, but did it purely out of motives of human sympathy.

It was shown in evidence that the woman was physically frail, and had been for months afflicted with acute rheumatism, and that she was given home treatment by application of hot water bags to her abdomen and lower back to relieve these rheumatic pains. One physician testified that such treatment of a pregnant woman, in her frail and run-down condition, might bring on an abortion naturally without the use of instruments.

The husband of the woman testified for the state as to the refund of money by defendant, but did not assume to know anything except what his wife told him about a forced abortion. The woman, although present, did not testify at all.

One of the assignments of error is that the proof is insufficient to support the verdict because the corpus delicti was not proved, and because there was no showing made by the state that, if an abortion was indeed committed by the defendant, it was not necessary to preserve the life of the mother.

The information states and there was proof supporting the averment, that the offense was accomplished by the "use and employment of instruments," without stating or showing the particular kind of instrument used. Two physicians testified that, from their knowledge, gleaned from a physcial examination of the mother and from the appearance of the fetus after delivery, it was their professional opinion that there had been an attempted abortion by means of instruments. One of them stated further that this conclusion was confirmed by what the patient told him.

It is necessary that the corpus delicti be proved by either direct or circumstantial evidence showing every essential element of the crime charged, in this case including the use of instruments. But it was not necessary to prove the particular instruments used. State v. Longstreth, 19 N. D. 268, 121 N. W. 1118, Ann. Cas. 1912D, 1317; 1 Corpus Juris, 318, and cases cited. As to circumstantial evidence of ways and means employed, see 1 Corpus Juris, 330 et seq. It was not necessary to prove, or for the jury to believe, that because the defendant was a dentist he used one or more of the instruments of torture commonly used in filling or extracting teeth.

Commenting on the sufficiency of the evidence with reference to the refund made to the husband of the woman, the attorneys for the respective parties advance these arguments:

By the Attorney General: "If there be one who can read defendant's story and explanations and accept them as true, his credulity is infantile, or his mind approaches a state of senility. Verily, not since the days of the Good Samaritan has there been one whose generosity has paralleled or equaled that of this liberal defendant. As a dentist he attends the aching voids of cavernous grinders and then gives back the fees to those thus administered unto! O generous soul!"

Defendant's counsel thus: "Wizzardy of language may please the ear and charm the eye, Ciceronian periods may add grace and poetic inflection to the classic page, but neither in one or the other do we find 'the sabre cut of Saxon speech' that carries conviction to the mind."

This case cannot be decided on general deductions of philosophy or embellished periods of rhetoric. Abstractly, the record shows that an abortion had been performed by the accused, and if it was not done by him to save the life of the mother he was guilty as charged.

The defendant claims that the burden of proof was upon the state to show that the act was not done to save the life of the mother; that the qualifying clause in the statute quoted, "unless the same shall have been necessary to preserve the life of the mother," states an integral and necessary part of the offense. This statute was copied from a like statute in the Dakota Code, and became effective here December 24, 1910. In the case of State v. Longstreth, 19 N. D. 268, 121 N. W. 1115, Ann. Cas. 1912D, 1317, decided June 11, 1909, the court held:

"Defendant's contention that the evidence is insufficient to support the verdict of guilty, upon the ground that

the state failed to prove that the abortion was not necessary to preserve the life of the woman, was properly overruled, as the facts and circumstances sufficiently establish at least a prima facie case in favor of the state on such issue. '* * * Mr. Bishop [Bishop on Statutory Crimes (3d Ed.) § 762] says: 'Under a statute which makes it an element of the offense that the abortion was not necessary, some courts hold that, though this want of necessity must be averred in the indictment, it need not be proved; but the burden is on the defendant to show a necessity. This is a sort of question on which judicial opinions differ.' * * * Under the record in this case we are not required to adopt either rule, as a consideration of the testimony serves to convince us that, without the aid of such presumption, the state has sufficiently established at least a prima facie case on this issue.''

In California, where a like statute exists, the question of whether there must be such negative averment and proof of the same by the state has not been decided. In the case of People v. Balkwell, 143 Cal. 259, 76 Pac. 1017, decided May 12, 1904, the court said:

''There is a wide divergence of authority upon the question as to whether, under a statute such as ours, the burden of establishing that the abortion was actually necessary is an affirmative defense, or whether the proposition is to be negatived in the first instance by the prosecution. * * * Conceding that it was for the prosecution to establish the fact that the operation was not necessary to preserve the life of the pregnant woman, that was sufficiently done in this instance.''

And to the same effect was People v. Thompson, 16 Cal. App. 748, 117 Pac. 1033.

Likewise in the case here under consideration it is not necessary to decide whether the burden is on the state in the first instance to show that the abortion was not necessary to save the life of the mother. The defendant was a dentist, who had no right under any circumstances to perform such

an operation. The woman upon whom it was performed was not related to him, there was no bond of friendship between them, and he was under no obligation to render her any assistance if indeed her life was in danger. Furthermore, the direct and circumstantial evidence indicates that the operation was performed for no good purpose. The question of whether the obligation is upon the state in the first instance to show that the abortion was not necessary to save the life of the mother will be for decision in some future case, if ever such arises. The states holding that this burden is upon the state are Connecticut, Delaware, Illinois, Indiana, Iowa, Massachusetts, Missouri, Ohio, Vermont, and Utah; those holding to the contrary are Colorado, Texas, Wisconsin, Washington, Alabama, and possibly other. The courts in some of the states enumerated in the list first given qualify the rule by stating that a negative allegation as to a matter peculiarly within the knowledge of the adverse party need not be proved.

It is urged further that the cause should be reversed because certain incompetent testimony was permitted to go to the jury. The record discloses that the defendant himself was responsible for some of the objectionable testimony which was brought out on cross-examination of the witnesses, and resulting re-direct examination by the state. One of the questions propounded to the husband of the woman by the defendant was:

"You went to Dr. Copus as a friend, after you found out that your wife had paid him that money and he had not yet done the work, to get money to pay Dr. Earnest; you didn't have it, and that is the reason you went to him, isn't it? Answer: No; I went to him because Dr. Earnest asked me to go."

On re-direct examination of this witness the state asked:

"Do you recall what your wife told you she had paid Dr. Copus $400 for?"

Counsel for defendant thereupon interrupted, stating:

"The witness has answered that once; he said he didn't know."

The court then said:

"I will let him answer it."

Answer:

"For performing an abortion, think it was; I am not sure."

Counsel for defendant then said:

"I am going to object to that, and ask that it be stricken, and that the jury be asked not to consider it. I never asked him a question about what she said."

The court replied:

"You asked him if he learned that this was paid for dental work. I will have to deny the request."

This approaches the border line of incompetency, as being hearsay and privileged communication. However, other portions of the testimony so strongly show that the defendant had performed the abortion, and the testimony elicited was explanatory of the payment of money, which was competent testimony for the proper consideration of the jury, that we are constrained to hold that the irregularity, under all the circumstances, was not vital.

Finally, it is contended that this cause should be reversed because of highly prejudicial and unwarranted remarks of the prosecutor in his closing argument to the jury. The remarks complained of followed this situation: The woman was a witness for the state, her name having been indorsed

upon the information as such. At the close of the testimony she was called to take the stand in rebuttal, and had qualified as a witness, whereupon the county attorney addressed the court thus:

"If the court please, the state will ask permission to examine this witness as a hostile witness; although she has been subpoenaed by the defense (as well as by the state) I wish to get her testimony in rebuttal of certain matters."

Then followed objections and dialogue between the attorneys, in which the attorney for the defendant said:

"We object to any such play like that before the jury."

At the conclusion of the dialogue, the hour of 5 o'clock having arrived, the court adjourned until the following morning, and at the appointed time reconvened with the woman still on the witness stand. The court inquired whether the parties were ready to proceed, and the county attorney announced that he had no further testimony to offer. The attorneys then proceeded with the argument, of which only the excerpts complained of are preserved in the record, they being as follows:

"By Mr. Green: I will tell you why I didn't put her on the stand. I thought she had been tampered with; I don't know by whom, or when, but by somebody—

"By Mr. Rutherford: I want to object to that statement. He is not authorized to make any statement of that kind here. He has had the witness all the time. He has got no right to get up before this jury and make a statement that anybody has tampered with the witness.

"By Mr. Green: I didn't say that you had, sir, and I didn't intimate it.

"By Mr. Rutherford: It doesn't make any difference; you have no right to make that statement, and I want to ask the court to instruct the jury it is improper argument.

"By the Court: The counsel will not argue to the jury that any witness has been tampered with; counsel may discuss in his argument to the jury any facts that were brought out in the testimony in this case.

"By Mr. Green: And then there was a certain affidavit made and signed by Mrs. Maples—

"By Mr. Rutherford: I object to that. There wasn't any of that got before the jury. There wasn't any affidavit made, so far as the jury knows.

"By the Court: I will sustain the objection on that. The jury will not consider the last remark of counsel for the state."

These alleged errors were urged before the trial court in defendant's motion for a new trial. The court, in overruling that motion, discussing this feature of the case, said:

"Objection No. 9 in the motion goes to certain statements made by the county attorney in arguing the case to the jury. I am not advised as to whether the quotation in the motion is a literal quotation or the substance.

"By Mr. Rutherford: A literal quotation.

"By the Court: The record will disclose.

"By Mr. Green: Just what language is connected with the county attorney?

"By the Court: The language accredited to you is, 'Gentlemen, I will tell you the reason we didn't put Mrs. Maples on the stand; it was because she had been tampered with in some wise, and we didn't know whether she would tell the truth.'

"By Mr. Green: I wish to state here that the language accredited to the county attorney on that occasion is not correctly quoted. It is not even the substance of the language used at that time.

"By the Court: The record will show whether the quotation is correct or not. The court will not attempt to pass upon that, but the court does find as a matter of fact, and did so find at the time the objection was made, that the remarks of the county attorney were proper in view of the argument made by the attorney for the defendant in arguing the case to the jury, and that the county attorney was only answering the arguments made by counsel for the defendant, and under the circumstances his argument was proper, and not objectionable. After considering the motion and the objections therein set forth, the court is of the opinion that it is not well taken, and should be overruled."

It has been held by this court that, where the record does not contain the argument of counsel in full, and it appears that the remarks of which complaint is made may have been provoked or brought on in answer to remarks made by opposing counsel not appearing in the record, the verdict will not be disturbed on that ground. In this case the trial court found as a matter of fact that the county attorney was answering the argument made by counsel for defendant, and that his reply to such argument was proper under the circumstances. Under this state of the record this case comes peculiarly within the rule announced in Sanditen v. State, 22 Okla. Cr. 14, 208 Pac. 1040, and Payne et al. v. State, 21 Okla. Cr. 416, 209 Pac. 334.

The judgment of the trial court is affirmed.

MATSON, P. J., and DOYLE, J., concur.