WALTER M. YEAGER v. STATE.

No. A-6768. Opinion Filed June 22, 1929.
(278 Pac. 665.)

Errol Joyce and E. G. Wilson (R. C. Searcy and P. H. Moroney, on the brief), for plaintiff in error.

Edwin Dabney, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

CHAPPELL, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of

Tulsa county on a charge of murder, and his punishment fixed at life imprisonment in the state penitentiary. Motion for new trial was filed, overruled, proper exceptions taken, and the cause is now on appeal in this court.

The information alleged that the defendant, Walter M. Yeager, on the 10th day of January, 1927, in Tulsa county, with premeditated design to effect the death of one E. A. Craig, shot him with a revolver or pistol, and did then and thereby cause the death of the said E. A. Craig. There seems to be no serious question about the sufficiency of the evidence in this case to support the verdict of the jury. While the evidence on the part of the state was wholly circumstantial, yet it was that kind of circumstantial evidence that established the guilt of the defendant beyond a reasonable doubt. The facts and circumstances proved in the case at bar were not only consistent with, and pointed to, the guilt of the defendant, but they were inconsistent with his innocence. Although the defendant in his motion for new trial assigns the insufficiency of the evidence as one of the grounds for granting a new trial, he has not briefed and does not argue the question in this court. The evidence in the case being sufficient to support the verdict of the jury, the cause must be affirmed, unless it affirmatively appears from the record that the defendant has been deprived of some statutory or constitutional right, or that fundamental error was committed by the trial court in the trial of the case. This court will consider the questions raised by the defendant in the order in which they transpire in the trial of the case, rather than in the order set forth in defendant's brief.

The first error complained of, occurring in the proceedings, is the unlawful arrest and the search and seizure

of letters, papers, and effects of the defendant, which effects and papers were introduced in evidence by the state. Section 2471, C. O. S. 1921, provides:

"A peace officer may, without a warrant, arrest a person:

"First. For a public offense, committed or attempted in his presence.

"Second. When the person arrested has committed a felony, although not in his presence.

"Third. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"Fourth. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

Section 2473, C. O. S. 1921, provides:

"He may also at night, without a warrant, arrest any person whom he has reasonable cause for believing to have committed a felony, and is justified in making the arrest though it afterward appear that the felony had not been committed."

It is clear that, under subdivision 3 of section 2471, the sheriff had full authority for making the arrest of the defendant. Under section 2473 the sheriff was authorized to make the arrest in the nighttime. The record discloses that the sheriff visited the place where the body of the deceased was found about 10 o'clock on the night of the homicide, and accompanied the body to Sand Springs, after having called an undertaker to come and remove the body. Later the sheriff learned that the defendant had had business dealings with the defendant, and had an appointment to meet him at the place where the deceased's body was found on the day of the homicide, and that defendant had been seen on or near the lease with the de-

ceased at about the time of the homicide. The sheriff returned to Tulsa after midnight, and, further learning that the defendant was planning to leave for New York, arrested him without a warrant at about 2:30 a. m. on the 11th day of January. The sheriff was accompanied to the home of defendant by one Thompson, who was the evidence man for the county attorney's office of Tulsa county. After the arrest of the defendant, Thompson took charge of a grip sitting beside the bed in which the defendant had been sleeping, which contained papers and effects of the defendant, tending to establish a motive for, and to connect the defendant with, the commission of the crime for which he was arrested. The defendant earnestly contends that the seizure of the papers by Thompson without a search warrant was illegal, and for that reason the evidence secured by the seizure was inadmissible, and that without this evidence no motive could have been established for the commission of the offense by the defendant.

Section 2477, C. O. S. 1921, is as follows:

"A private person may arrest another:

"First. For a public offense committed or attempted in his presence.

"Second. When the person arrested has committed a felony although not in his presence.

"Third. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it."

Under the provisions of this section, Thompson as a private citizen would have been authorized to arrest the defendant, and, having arrested him, he would have been authorized to seize whatever was found upon the person or under the control of the defendant which might be used to prove the offense. The fact that Thompson ac-

companied the sheriff, and acted with him and apparently under his supervision, would have been sufficient to authorize the seizure of the papers and effects of the defendant, which were competent evidence to be used against him, and the further fact that Thompson was authorized under section 2477 to make the arrest and seizure, even as a private citizen, shows there is no merit in the contention of the defendant that the arrest was improper or illegal, and that the seizure of the papers and effects rendered them inadmissible.

The defendant next complains of the selection of the juror P. H. Gallagher, because it appeared from an examination of the juror on his voir dire that, from reading the accounts of the homicide in the newspapers and from what he had heard, he formed an opinion that E. A. Craig had been murdered, but that he had formed no opinion of the guilt or innocence of the defendant. The defendant had exhausted all of his peremptory challenges and could only have the juror Gallagher removed from the jury box upon challenge for cause, and alleges that he was not given a fair trial by a legal jury, because the trial court overruled his challenge to the juror for cause.

In the examination of the juror by the court, he testified as follows:

"Q. You would not take a man's life away from him on the assumption that he was murdered? A. No, sir.

"Q. Would you not require the state to prove beyond a reasonable doubt that he was murdered? A. Yes, sir.

"Q. Will you start out on the assumption that the deceased was murdered, or will you require the state to prove it? A. They will have to prove it.

"Q. Now, there is no doubt in your mind on that, is there? A. Absolutely not.

"Q. You will require the state to prove the illegal death of Craig beyond a reasonable doubt, as well as any other allegation in the information; will you do that? A. Yes, sir."

Section 2678, C. O. S. 1921, provides:

"In a challenge for implied bias, one or more of the causes stated in the second preceding section must be alleged. In a challenge for actual bias, the cause stated in the second subdivision of the third preceding section must be alleged; but no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon rumor, statements in public journals, or common notoriety, provided it appears to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him. The challenge may be oral, but must be entered upon the minutes of the court."

The fact that the juror had formed an opinion as to the cause of the death of Craig did not disqualify him as a juror. The opinion formed must go to the guilt or innocence of the defendant, and not to the manner in which the homicide was accomplished. In the case of Martindale v. State, 16 Okla. Cr. 23, 180 Pac. 385, this court said:

"An assignment of error based upon the court's action in overruling a challenge for cause to an individual juror will be of no avail on appeal unless there is an affirmative showing that the challenge for cause was well founded, and that the defendant was compelled to accept such disqualified juror by reason of having theretofore exhausted all of his peremptory challenges. Also the acceptance of such juror by waiving a peremptory challenge as to him will render such an assignment of error unavailing."

In the case of Turner v. State, 4 Okla. Cr. 164, 111 Pac. 988, the court said:

"A mere impression not amounting to an opinion, derived from newspaper reports or rumor does not disqualify a juror, and is not sufficient cause for challenge. It must appear that he has formed a fixed opinion. A juror who states on his examination on the voir dire that he has an impression, not amounting to an opinion, from the reading of a newspaper account of the tragedy, and that his impression did not amount to an opinion, and was not such as would in any way influence his verdict, is competent, and a challenge for cause by reason of implied bias was properly overruled. The statute which provides (section 6814, Snyder's) that: 'No person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon rumor, statements in public journals, or common notoriety, provided it appears to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him,' is not in violation of the constitutional guaranty of the right to a trial by an impartial jury."

It appearing from the record that the juror Gallagher was without bias and prejudice, and could act fairly and impartially in the trial of the case, and the trial court having in the exercise of his discretion held the juror to be qualified, this court will not reverse the case, unless that discretion of the trial court appears to have been abused. It appearing from the examination of the juror on his voir dire that he was not biased and prejudiced against the defendant, the challenge of the juror for cause was properly overruled.

The defendant next complains that the court erred in admitting incompetent, irrelevant, and immaterial evidence. At the time of the arrest of the defendant, when apprised of the death of Craig, he told the sheriff, "I would not harm a hair of his head." A short while after, on

reaching the sheriff's office, the sheriff testified that the defendant manifested unconcern as to the death or manner of death of Craig, who had been his business associate and friend. The sheriff testified that he asked the defendant if he wanted him to tell him how he thought Craig met his death, of which the defendant answered he did. Thereupon the sheriff described to the defendant the manner in which he believed the defendant had killed Craig, and the defendant denied that he had done the killing. Any voluntary statement made by the defendant after his arrest was properly admissible in evidence. The evidence of the sheriff discloses that the defendant did promptly deny any connection with the killing of Craig, and the evidence could not have been prejudicial to him, because it got before the jury the fact that the defendant promptly denied any connection with the killing of Craig. At about 8:30 in the morning of January 11th, the defendant was brought to the office of the county attorney, where he made a voluntary statement concerning all the matters in question concerning his relations with the deceased, his whereabouts on the day of the homicide, and his connection with the same. This statement was taken in shorthand at the time it was made and reduced to writing and offered in evidence by the state. The defendant at first objected to the introduction of this statement, but finally withdrew the objection, agreeing to its admission, and through his counsel vouched for its truthfulness in the presence of the jury.

In the case of Cowan v. State, 42 Okla. Cr. 316, 275 Pac. 1070, this court said:

"When a defendant is clearly proven to be guilty, this court will not reverse a conviction upon any technicality or exception which does not affect the substantial rights of the defendant."

The defendant having consented to the introduction of his statement taken in writing, we are unable to see how the admission of the evidence of the sheriff complained of could have influenced the jury, or have substantially affected the rights of the defendant.

The defendant next complains because the court permitted the jury to visit the scene of the crime. The following proceedings appear in the record:

"The Court: Gentlemen, as I understand it, it was agreed here that the jury might view the premises.

"Mr. Joyce: Both sides have rested the case.

"The Court: I understand. That is right, isn't it?

"Mr. Joyce: Yes, sir.

"The Court: Do you want them to go this afternoon or in the morning?

"Mr. Joyce (counsel for defendant): Whatever the jury says about it.

"The Court: When do you want to go, gentlemen?

"A Juror: To-morrow.

"The Court: Does the defendant agree they may go to-morrow? To-morrow is Sunday.

"Mr. Joyce: Oh, yes."

The court then admonished the jury not to discuss the case among themselves, or permit any one else to discuss it with them, and not to form or come to any conclusion as to the guilt or innocence of the defendant, advising the jury that it had been agreed that they were to be taken to view the place where the homicide was committed, and that that would be evidence, and that the case had not been finally submitted to them. The court then placed the jury in the charge of sworn officers and gave

them the usual instruction. The defendant having consented in open court to the jury visiting the scene of the homicide, and the court having admonished the jury as to their conduct and having advised the jury that what they would see would be evidence, and the defendant having made no objection to the admonitions of the court, and having failed to have the court rule upon the question of the propriety of the admonitions, there is no question before this court for it to pass upon. This court has repeatedly held that upon request, jurors may be permitted to view the premises.

In the case of Bird v. State, 22 Okla. Cr. 264, 210 Pac. 925, this court said:

"Where, before final submission, the jury were permitted to separate, and three jurors without permission inspected the place where the homicide took place, and where the whole panel, after submission, with the consent of the court, inspected the place, such irregularity will not operate as a reversal where nothing prejudicial appears."

If the facts revealed in the case of Bird v. State, supra, were not sufficient to bring about the reversal of that case, it is evident that where each juror, by agreement of the defendant and state and upon instructions of the court and under its direction, should be permitted to view the place where the homicide occurred, this would not be error, but would be altogether proper. In all other acts in connection with this view of the premises by the jury there is nothing that should even create a suspicion of any wrong in connection therewith.

The defendant strenuously insists that it was fundamental error for the court to advise the jury that what they saw at the place where the homicide was committed would be evidence. This court has never heretofore passed

upon that question. In the case of Starr v. State, 5 Okla. Cr. 440, 115 Pac. 356, in syllabus 11, this court said:

"Quære, whether a view by the jury in a criminal case of the place of the crime is the taking of evidence within the meaning of the constitutional provision conferring upon the accused the right to be confronted with the witnesses against him, or is only a means of enabling the jury to better understand and apply the evidence presented in the court."

Thus leaving the question undecided whether the autoptic proference of the place of the crime was evidence.

Wigmore on Evidence, volume 2, § 1168, (3), on page 1372, says:

"The suggestion that, in a view or any other mode of inspection by the jury, they are merely 'enabled better to comprehend the testimony,' and do not consult an additional source of knowledge, can be easily shown to be simply not correct in fact. The following passages well expose the fallacy of the notion that the jury's view is not an obtaining of evidence, in the sense of consulting additional sources of knowledge."

And on page 1373 says:

"The theory that a jury's view does not involve the obtaining of evidence has come before the courts for consideration in many cases involving the propriety of instructions to juries and the weight to be accorded by juries to witnesses' testimony; and, in spite of some favoring precedents, it has 'in most jurisdictions been repudiated."

In support of this doctrine Wigmore quotes the following cases: People v. Milner, 122 Cal. 171, 54 Pac. 833; Peoria, A. & D. R. Co. v. Sawyer, 71 Ill. 361; Maywood Co. v. Maywood, 140 Ill. 216, 29 N. E. 704; Lanquist v. Chicago, 200 Ill. 69, 65 N. E. 681; Kansas C. & S. R. Co. v. Baird, 41 Kan. 69, 21 Pac. 227, and many cases from other states.

Mr. Wigmore does not attempt to define what kind of evidence autoptic proference would be, but merely lays down the rule that it is evidence. Under the Constitution and statutes of this state, a view of the premises by the jury in a criminal case is not a receiving of evidence by the jury in the ordinary sense, as used in the Constitution and statutes of this state. It is a special kind of evidence, generally referred to by all the authorities as autoptic proference, and is permitted to go to the jury only in the special manner provided by the statutes, for the purpose of enabling the jury to better understand and apply the evidence introduced in the ordinary manner, and it may also enable the jury to be able to determine the accuracy of the information of witnesses and the credibility of their testimony, by comparison of the facts testified to with the facts disclosed by the examination of the place where the offense was committed.

A witness might testify that there were no windows in the north side of the state capitol at Oklahoma City. A visit to the capitol and an inspection of the north wall of the building would reveal that the witness was either mistaken or testifying to an untruth, and in that kind of a case a visit to the place and an examination thereof would most certainly be evidence, not, however, being the kind of evidence included in the common use of the term in the Constitution and statutes of this state. The defendant cannot be heard to object that it was receiving evidence outside of the place where the court is held, or that the defendant is deprived of his constitutional right of confrontation, nor yet in the sense that it is evidence that cannot be incorporated in the record on appeal. The courts of the United States and England have long since almost unanimously settled these questions in favor of the state, and held that the evidence produced by autoptic

proference was not subject to any of these objections. The contention of the defendant that the view of the premises, therefore, was not evidence as defined in this opinion, was without merit, and the court committed no error in telling the jury that what they saw at the place where the crime was committed was evidence.

The defendant next complains of instruction No. 10, which instruction went to the question of impeaching the testimony of a witness in the case. There was some evidence offered by the defendant to impeach the testimony of the witness Ben C. Axley for truth and veracity. When evidence has been introduced to impeach the testimony of a witness, that does not necessarily mean that a person cannot and will not tell the truth, and especially in matters in which he has no personal interest, and it is not the law of this state that, because a person has been impeached in this way, therefore the jury cannot consider his testimony at all. This court has repeatedly held that the credibility of the witnesses and the weight and value to be given their evidence is for the determination of the jury. The jury, having heard the evidence of the witness Axley, noted his demeanor upon the witness stand and his manner of testifying, were in the proper position to determine the truthfulness of his evidence, and they were not bound to reject his testimony because the defendant had offered impeaching testimony. Especially is this true in the case at bar, because Axley was corroborated in some of his material statements by a witness whose evidence the defendant did not attempt to impeach. It was not necessary to give this special instruction, as the general instruction on the credibility of the witnesses and the weight to be given their testimony correctly stated the law of the case. The eminent trial judge, apparently in his desire to safeguard the rights of the defendant, gave the instruction

complained of. We are unable to see how the rights of the defendant could have been prejudiced in any manner by giving this instruction.

Finally, the defendant complains of the misconduct of the assistant county attorney, Mr. Coffey. The defendant first complains that it was misconduct for the assistant county attorney to refer to the fact that the defendant had failed to take the stand and testify in his own behalf. The defendant's attorneys objected to the statement of the assistant county attorney with reference to the defendant not having taken the witness stand, and asked the court to instruct the jury not to consider it, and the court said:

"Let the record show that the court overrules the objection upon the ground and for the reason that counsel for the defendant in his argument stated to the jury that the reason the defendant was not placed upon the stand was for the reason that he had made a statement, introduced in evidence, and that that statement was the truth, and for that reason the objection is overruled."

The record does not contain the argument of counsel for defendant, but this court, in the case of Moody v. State, 13 Okla. Cr. 327, 164 Pac. 676, in syllabus 6 said:

"Where the argument of the county attorney is not taken down in shorthand and embodied in the record in full and a dispute arises as to what was said in argument, this court is bound by the finding of the trial court recited in the record as to what occurred."

The same rule would apply to the address made by the attorney for the defendant. There appears to be no dispute about the fact that the attorney for the defendant first spoke of and gave reasons for the defendant not having been placed on the stand as a witness in his own behalf.

In the case of Soper v. State, 22 Okla. Cr. 27, 208 Pac. 1044, syllabus 2, this court said:

"Where the defendant's attorney in his argument to the jury first mentions the subject and attempts to explain why the defendant did not take the stand in his own behalf, to that extent the defendant waives his constitutional and statutory right protecting him from comment upon his failure to testify. Where such discussion is invited by defendant or his counsel, the defendant has no cause of complaint."

In the case of Cherry v. State, 33 Okla. Cr. 37, 241 Pac. 833, syllabus 2, this court said:

"It is not reversible error for counsel for the state to comment on the failure of a defendant to testify, where defendant's counsel himself first comments on the fact that the defendant did not take the stand."

See, also, Copus v. State, 26 Okla. Cr. 366, 224 Pac. 364, syllabus 3; Sanditen v. State, 22 Okla. Cr. 14, 208 Pac. 1040; Payne v. State, 21 Okla. Cr. 416, 209 Pac. 334.

Counsel for the defendant having explained to the jury the reasons why the defendant did not take the witness stand in his own behalf, the county attorney had a right to discuss the failure of the defendant to take the stand, and the court did not err in overruling the objections of the defendant.

The defendant complains of other acts of misconduct of the assistant county attorney in the argument of the case. In the case of Halsey v. State, 42 Okla. Cr. 221, 275 Pac. 405, this court said:

"Where certain remarks of the county attorney in argument to the jury are not such as are made grounds for reversal by statute, and there was no motion to exclude

such remarks from the consideration of the jury, nor any ruling of the trial court adverse to the defendant to which an exception was saved at the time, there is no question presented for this court to consider."

From an examination of the entire record, we cannot say that the remarks of the assistant county attorney were prejudicial, and, not being such grounds as are made reversible by statute, the court did not err in overruling the defendant's motion for new trial on the ground of misconduct of the assistant county attorney.

The defendant complains of numerous other errors, but they are without sufficient merit to justify a reversal of this case. The record discloses that a foul crime was committed, and the evidence clearly shows that the defendant was guilty of this crime. It would not be possible to try a case of this character, considering the size of the record, the length of the trial, the number of witnesses, and the zeal of counsel, without error creeping into the record. The errors complained of by the defendant are none of them of such a nature as would require a reversal of this case. The Criminal Court of Appeals never presumes error in the proceedings of a court of record. Every presumption favors regularity of the proceedings had upon the trial. The plaintiff in error must affirmatively show prejudicial error; otherwise, the judgment of the trial court will be affirmed.

The evidence offered by the state being sufficient to support the verdict of the jury, and no fundamental errors of law appearing upon the record, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.