## H. D. BRADBURY et al. v. STATE.

No. A-8048. Opinion Filed May 23, 1931.
(299 Pac. 510.)

James Mathers and Charles L. Roff, Jr., for plaintiffs in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. Plaintiffs in error, hereinafter called defendants, were convicted in the district court of Oklahoma county of the crime of murder, and their punishment fixed by the jury at imprisonment in the state penitentiary, at hard labor, for the remainder of their natural lives.

The evidence of the state was that on the 22d day of March, 1930, the defendants robbed the Saunders grocery store at 1412 North Robinson; that at about 8:30 in the evening defendants entered the store and ordered the clerks and inmates to put up their hands; that J. D. Gates was an officer stationed at the store to watch it on Saturday nights; and that defendants began to fire their revolvers at Gates, and as a result thereof he was killed. At the beginning of the trial, the state and defendants stipulated that Gates was shot and killed at the time of the robbery. Witnesses for the state positively identified the defendants as the men who robbed the store and shot and killed Gates.

The defense was an alibi. The defendants did not take the witness stand.

Defendants contend, first, that the court erred in sustaining the state's objection to defendants' questions on cross-examination of Irene Casey.

The particular evidence complained of is:

"Q. Did you ever have occasion in your life to meet someone and be mistaken in the party you met? A. What do you mean?

"Q. Have you ever gone up and spoke to someone that you thought you knew and discovered that you were mistaken?

"Mr. Deupree: Oh, objected to as incompetent, irrelevant and immaterial.

"The Court: Sustained as immaterial.

"Mr. Mathers: Exception."

The witness had positively identified the defendant Points as one of the parties shooting at Gates at the time he was killed.

The question in the case was, not whether the witness might have been mistaken as to the identity of some hypothetical person, but could she identify the defendant Points at the time of the trial.

Defendants next contend that the court erred in permitting testimony to be introduced by the state, over the objection of the defendants, that defendants were seen with pistols in their possession on the day following the homicide, and that, when they were arrested, some four or five days after the homicide, they had pistols in their possession at that time.

The witness Quinn, testifying for the state, said that Points had been his partner in the restaurant business; that he had seen Points and Bradbury at his cafe the Thursday evening before Gates was killed; that they went to Wewoka, and they called him over the telephone on Friday evening or Saturday morning; that at about 8:30 Sunday morning they came to the cafe, and Points put a gun in the refrigerator box; that he showed the defend-

ants a newspaper giving an account of the Gates killing, and told Bradbury it was a pretty good description of him; that Points stayed in the cafe and Bradbury went to bed; that Sunday evening about 9:30 or 10 o'clock defendant Bradbury was up fooling with an automatic gun; that on Monday morning they took their clothes down town; that they had on the same hats they were wearing Sunday morning; that in the afternoon, when they returned to the cafe, Bradbury was wearing a cap and Points had changed from a cap to a hat.

Jack Ross, testifying for the state, said he arrested the defendants on the night of March 26th, and found one six shooter lying in front of the car on the floor, and a box of shells and other shells near the box. The witness identified two guns as found in the car and on the ground at the side of the car at the time he arrested the defendants.

The fact that defendants returned to the cafe shortly after the homicide was committed and left their guns, and the fact that the guns were taken away from the cafe by defendants and were later found in their possession when they were arrested, were circumstances to be considered by the jury, together with all the other facts in the case, in determining the guilt or innocence of the defendants.

In Yeager v. State, 43 Okla. Cr. 318, 278 Pac. 665, 666, this court said:

"Where a person is legally arrested for an offense, whatever is found upon his person or in his control, which may be used to prove the offense, may be seized and held for evidence in the prosecution."

Defendants next contend that the court erred in not sustaining defendant's motion to discharge the jury and declare a mistrial when the deputy sheriff in charge of the defendants brought them into the courtroom handcuffed

together, in the presence of the jury. Defendants' counsel argue:

"Even though the handcuffs were removed and the defendants allowed to sit with their attorneys, such action could not fail to impress upon the minds of the jurors that these defendants were hardened criminals. We can cite no case upon this point, but such action is directly opposed to the presumption of innocence that surrounds an accused until his guilt is proven by competent evidence beyond a reasonable doubt."

In response to defendants' objection to this procedure by the officers, the court said:

"Let the record show that the deputy sheriff in transporting the prisoners from the jail to the courtroom brought them through a side door into the courtroom and took the handcuffs off of them, when the prisoners were permitted to go to their seats behind their counsel without any handcuffs and unaccompanied by the officers, and give the defendants an exception."

The authorities are divided upon the question of whether or not it is reversible error to bring a defendant into the courtroom manacled and even keep him manacled during the trial.

In Lee v. State, 51 Miss. 566, the Supreme Court of that state held:

"Shackles may be kept on a prisoner during his trial if they are deemed necessary to prevent his escape."

To the same effect is Matthews v. State, 77 Tenn. (9 Lea) 128, 42 Am. Rep. 667.

In Faire v. State, 58 Ala. 74, the Supreme Court of that state held:

"A defendant in a criminal case should be manacled or shackled during the trial only in an extreme case, but

whether such a case exists or not is entirely within the discretion of the trial court."

In State v. Duncan, 116 Mo. 288, 22 S. W. 699, the Supreme Court of that state said:

"The court may permit a dangerous and desperate man, charged with murder in the first degree, to be attended during the trial, and while testifying, by an armed guard."

In Rainey v. State, 20 Tex. App. 445, that court held:

"It is not ground for a reversal that the sheriff brought the prisoner into the courtroom for trial in chains; the precaution apparently being necessary, and the chains having been removed by order of the court before the trial began."

The defendants were charged with a capital offense. They were arrested under circumstances that indicated they were hardened criminals. It was the duty of the officers to prevent the escape of the prisoners during the trial. It does not appear from the record that anything more was done by the officers or the court than prudence required to restrain the defendants and protect the public.

The record discloses that the defendants had a fair trial, and the evidence supports the verdict of the jury.

For the reasons stated, the cause is affirmed.

EDWARDS, J., concurs. DAVENPORT, P. J., absent.